## HARMON C. FOSTER *v.* THE STATE.

1. CRIMINAL LAW. *Indictment.* Under our system of criminal pleading an indictment is good which contains a statement, in ordinary and concise language, embodying all the requisites that go to constitute the offense.

2. SAME. *Same. Homicide.* An indictment is sufficient which avers that the defendant, with a pistol charged with powder and ball, did make an assault upon the deceased, and, by shooting with the pistol, inflicted a mortal wound, of which the deceased died, and that the defendant, by the means aforesaid, in manner and form aforesaid, the

said deceased "feloniously, willfully, deliberately, premeditatedly and of his malice aforethought, did kill and murder and commit murder in the first degree."

3. SAME. *Malice presumed. When.* The law presumes malice from the killing with a deadly weapon, but the jury may look to all the facts and circumstances developed by the evidence, either by the State or the defendant, to ascertain whether the malice is rebutted, a reasonable doubt enuring to the defendant.

FROM PUTNAM.

Appeal in error from the Circuit Court of Putnam county. W. N. McCONNELL, J.

E. L. GARDENHIRE for Foster.

ATTORNEY-GENERAL LEA for the State.

COOPER, J., delivered the opinion of the court.

The indictment in this case charged that the defendant, Harmon C. Foster, with a pistol, charged with powder and leaden balls, an assault did make upon the body of one Cinthia Ann Hood, and upon her, by shooting with the pistol charged as aforesaid, inflicted a mortal wound, of which wound she died. "And so the grand jurors, upon their oaths aforesaid, present and say that the said Harmon C. Foster, by the means aforesaid, in manner and form as aforesaid, the said Cinthia Ann Hood, feloniously, wilfully, deliberately, premeditatedly, and of his malice aforethought, did kill and murder, and commit murder in the first degree," contrary, etc.

It is objected to the indictment, that it should have charged that the defendant feloniously, etc., made the assault, as well as feloniously, etc., did murder.

All that is now required, under our system of criminal pleading, is that the statement be made in ordinary and concise language, embodying all the requisites that go to constitute the offense: *Logan* v. *State*, 2 Lea, 222; Code, secs. 5114, 5120. The present indictment is, in substance, that the defendant, by shooting with a loaded pistol, and inflicting a mortal wound, did feloniously, etc., kill and murder the deceased. It contains all the averments required to make out a charge of murder in the first degree, and is good.

The jury found the defendant guilty of murder in the second degree, and it is argued that the facts do not sustain the verdict. The defendant came to the house of the prosecutor about sunup, before any of the family had risen, and called out that he wanted in. Prosecutor arose, opened the door, and found the defendant standing outside with a pistol in his hand, cocked. The pistol was a small Wesson revolver, with the chambers all loaded with ball. He said he had taken a woman away from another man that night on the mountain, and given her to a friend of his; that he had broken his pistol, and had come to get a string to tie it down. Prosecutor took the pistol out of his hand, uncocked it, and, going into the house, laid it on the table, and called his wife to get up and make the defendant a string. Defendant walked to the table, took the pistol, and seated himself on a chair near the door. The prosecutor's wife brought a cob spool of thread, and, standing about four feet from defendant with her side to him, commenced making the string for him by winding off the

spool and doubling it on prosecutor's finger, the prosecutor's other hand resting on the post of the chair in which defendant was sitting. Something was said by one of the children still in bed, which induced prosecutor to turn his face that way, when the pistol fired. When prosecutor whirled around, the defendant was straight, or nearly straight on his feet, with the pistol, held in both hands, pointing towards prosecutor's wife, who was sinking to the floor. The defendant held the handle of the pistol in his left hand, the right hand being on the under side of the barrel in front of the cylinder. Defendant immediately went out of the house without saying anything, then came back, still holding the pistol with both hands, and said, "Cynthia, Cynthia"—that being the given name of prosecutor's wife. She made no response, and defendant left the house. The pistol ball had struck the prosecutor's wife in the side of the head, passing completely through the brain. She died between ten and eleven o'clock that morning, having spoken only a word or two after the shot.

The law presumes malice from the killing with a deadly weapon, but the jury may look to all the facts and circumstances developed by the evidence, either of State or the defendant, to ascertain whether the malice is rebutted, a reasonable doubt enuring to the benefit of the defendant: *Bryant* v. *State*, 7 Baxt., 67. The defense relied upon was that the shooting was accidental. Three witnesses, present at the killing, were examined by the State, all of whom say that defendant set up no such defense at the time. The de-

fendant himself introduced his mother and brother as witnesses, who prove that defendant came to their house and woke them up that morning, and told his brother to go down to Hood's and see if his wife was dead. Both witnesses say that he did not tell them that the killing was accidental. Another person, who acted as a guard of the defendant after the trial before the committing magistrate, was introduced as a witness by the State. He proves that the defendant offered to sell the pistol to buy tobacco, and said that the spring that held the barrel down was broken, so that he had to hold the barrel down in order to shoot it. He further said, that when the woman was shot he did not press the barrel back hard enough, and got his hand powder burnt. The witness saw that the defendant's hand was burned. In this conversation, the defendant did not say that the shooting was accidental.

The prosecutor proves that, a month or so before the killing, defendant wanted to borrow from deceased a dress and pair of shoes for his (defendant's) wife to wear to Cookville to apply for a divorce from him. The deceased did not wish to have anything to do with the business, and refused the request. The prosecutor says defendant got miffed about her refusal. Another witness for the State proves that defendant made a crop with him the year of the killing, and, about three weeks before that occurrence, witness heard defendant talk about the deceased. He said she had refused to lend his wife her clothes to go to town to see about getting a divorce from him, and that if she

fooled with him he would take a stick and knock her damned head off, and beat her brains out, or, that he would knock her down and stamp her to death. The witnesses who speak on the subject, including two or three of his own witnesses, say that defendant had been drinking, but was not drunk on the morning of the killing.

The verdict was clearly warranted by the facts, and the judgment must be affirmed.